STATE *ex rel.* CLYDE W. REA *vs.* SANFORD KINMORE *et al.*

Argued by appellants, submitted on brief by respondent, May 25, 1893.  Affirmed
June 30, 1893.

### Petition Insufficient to Confer Jurisdiction.

> Where in a petition or application to the Probate Court, signed by two of
> the county commissioners, under the provisions of Laws 1889, ch. 167, §
> 11, (the act relating to a state public school,) the only averment in rela-
> tion to the situation or condition of the child mentioned is that he belongs
> "to one of the classes enumerated by the statutes of the state as admissi-
> ble" to such school, the Probate Court does not acquire jurisdiction to pro-
> ceed against the child or its natural or legal guardians.

### Jurisdiction of the Court can be Inquired into on Habeas Corpus.

> Notwithstanding the terms of 1878 G. S. ch. 80, § 22, the jurisdiction of
> the tribunal whose judgment is involved over the person detained and the
> subject-matter may be inquired into at all times on *habeas corpus*, but
> the writ cannot have the force or operation of a writ or error or *certiorari*
> or appeal, nor is it designed as a substitute for either.

Appeal by Sanford Kinmore and Ida Kinmore his wife, from a
decision of the District Court of Lyon County, *B. F. Webber*, J.,
given and entered June 21, 1892, discharging the child Jessie Rea
from their custody.

On February 26, 1892, two of the county commissioners of Lyon
County presented a petition to the Probate Court of that county
asking that Jessie Rea, a female child, be sent to the State Public
School at Owatonna.  The mother of the child consented that the
application be granted.  On March 1, 1892, that court made an order
reciting that the child Jessie Rea was born August 28, 1888; that
it was sound in mind and body; that Clyde W. Rea, its father,
a printer by trade, resided in Chicago, Ill.; that its mother, Lena
Rea, resided at Tracy and consents, and that the child belonged
to one of the classes described in the statute as admissible to that
school, and ordered that it be taken to that school and admitted
therein.  On April 28, 1892, the Board of Control of that school,
by G. A. Merrill, agent, made a contract with Sanford Kinmore
and Ida Kinmore, his wife, of Tracy, placing the child with them
until eighteen years of age, pursuant to Laws 1885, ch. 146, as
amended by Laws 1889, ch. 167, and Laws 1891, ch. 124.

On May 9, 1892, the father, Clyde W. Rea, appeared before the District Court and obtained a writ of *habeas corpus* returnable May 13, 1892, at the chambers of the Judge in New Ulm, requiring Kinmore and wife to produce the child, together with the time and cause of its detention before that court, to do and receive what should then and there be considered. It was served and they made return, stating the proceedings above mentioned. They attached copies of the entire record and papers.

At the hearing evidence was produced by the relator and by the respondents, and an adjournment to May 25, 1892, was granted, at which time the court held that the Probate Court of Lyon County did not acquire jurisdiction or have authority to make the order committing the child to the State Public School; that this order, and the agreement made by the Board of Control with Kinmore and wife, were each null and void, and that the relator was entitled to the custody of his child. Formal judgment to this effect was entered. Kinmore and wife appeal from the decision to this court. A case was made, settled, signed and filed. Notice of appeal was served on the attorney for the relator and on the clerk of the District Court for Lyon County, and he made a return, consisting of a certified copy of the record in his office and all the papers on file. In this court the appeal was noticed for argument and placed on the calendar. The papers were printed, errors assigned and briefs served as in ordinary cases.

*Wheelock & Sperry*, for appellants.

The writ cannot be used to review or correct orders and judgments which are erroneous merely. Nothing will be investigated on *habeas corpus* except jurisdictional defects. *Petition of Crandall,* 34 Wis. 177; *Petition of Semler,* 41 Wis. 517; *State* v. *Sheriff of Hennepin Co.,* 24 Minn. 87; *Matter of Underwood,* 30 Mich. 502.

The District Court erred in considering questions which might have been raised at the hearing before the Probate Judge, and in considering questions upon which the Probate Court ruled, however erroneous such rulings may have been. *People ex rel.* v. *Durston,* 119 N. Y. 569; *In re Rafferty,* 1 Wash. St. 382; *In re Bion,* 59 Conn. 372.

The return to the writ shows that Jessie Rea is held under the

final judgment of the Probate Court of Lyon County, a court of competent jurisdiction. *Jacobs* v. *Fouse,* 23 Minn. 51; *Davis* v. *Hudson,* 29 Minn. 27.

The statute 1878 G. S. ch. 80, § 22, seems to prohibit a review of the judgment of the Probate Court by means of this writ. *People* v. *Gray,* 4 Park. C. 616; *In re Lybarger,* 2 Wash. St. 131; *Ex parte Watkins,* 3 Pet. 193; *Ex parte Bergman,* 3 Wy. 396; *Ex parte Keil,* 85 Cal. 309; *Ex parte Miller,* 82 Cal. 454; *Murray's Case,* 43 Cal. 455.

Laws 1885, ch. 146, § 17, as amended by Laws 1889, ch. 167, § 11, provides that the proceedings under such petition shall not be deemed invalid by reason of any failure to serve such citation or by any informality or irregularity in such petition or service. It was for the Probate Judge to decide upon the sufficiency, regularity and validity of the petition. He did decide, and it does not matter how erroneous his decision was. It cannot be inquired into in this *habeas corpus* proceeding. *McLaughlin* v. *Etchison,* 127 Ind. 474; *Ex parte Keil,* 85 Cal. 309; *In re Hause,* 32 Minn. 155; *Farnham* v. *Pierce,* 141 Mass. 203.

This is not a proceeding between father and mother to determine which is entitled to the custody of the child, but is a proceeding wherein it is sought by the writ of *habeas corpus* to reverse the final judgment of a court of general jurisdiction, committing the child to the guardianship of the State School for Indigent Children.

*Chas. W. Main* and *Geo. W. Somerville,* for respondent.

The District Court on *habeas corpus* can inquire whether the Probate Court obtained jurisdiction to commit Jessie Rea to the State Public School. *State ex rel.* v. *Bechdel,* 37 Minn. 360; *People ex rel.* v. *Liscomb,* 60 N. Y. 559; *State* v. *Sheriff of Hennepin Co.,* 24 Minn. 87.

Where a father who is the natural guardian of his minor child sues out a writ of *habeas corpus* to obtain its custody, he who would prevent, must show not only a valid law by which the child is detained, but that the law has been strictly complied with. *Wales* v. *Willard,* 2 Mass. 120; *Sumner* v. *Parker,* 7 Mass. 78; *Smith* v. *Rice,* 11 Mass. 507; *Blodgett* v. *Hitt,* 29 Wis. 169; *Mohr* v. *Tulip,* 40

Wis. 66; *Frederick* v. *Pacquette*, 19 Wis. 541; *Chase* v. *Ross*, 36 Wis. 267; *Stizman* v. *Pacquette*, 13 Wis. 291.

Laws 1889, ch. 167, § 11, provides that before the Probate Court shall commit any child to the school, an application in writing shall be made and signed by at least two County Commissioners, setting forth certain facts. It is this petition that gives the Probate Court jurisdiction; without it that court has no authority to try and determine any fact, and if it assumes to act without such petition, showing the child to be a fit subject for the school, it has no jurisdiction and can acquire none. The petition in this case does not state any facts but mere conclusions, and does not comply with the statute in form or substance. The law expressly provides that in said petition the commissioners shall certify that in their opinion the child named in said petition is dependent on the public for support, or is in a state of habitual vagrancy, or mendicity, or is ill treated and in peril of life, health or morality, by continued cruel personal injury or by the habitual intemperance or gross misconduct of the parent or guardian. This petition does not allege nor does the Probate Court find the existence of any one of these facts, authorizing that court to commit the child to the State Public School. A commitment to the school without such allegations and findings is not an informality or irregularity. It is unauthorized and void. *In re White*, 43 Minn. 250; *People* v. *New York Catholic Protectory*, 106 N. Y. 604.

The father had no notice of the proceedings before the Judge of Probate and did not appear. He is not bound by its decision. He alone is the proper party to have the custody of the child, and no court should seek to deprive him of it. *Farnham* v. *Pierce*, 141 Mass. 203; *People* v. *New York Catholic Protectory*, 106 N. Y. 604; *People* v. *New York Catholic Protectory*, 101 N. Y. 195; *Goodchild* v. *Foster*, 51 Mich. 599; Wells, Jur., §§ 33, 35, 36.

The petition is insufficient. *Shipman* v. *Butterfield*, 47 Mich. 487; *Whelan* v. *County Com'rs of Sibley Co.*, 28 Minn. 80; *In re Brown*, 45 Mich. 326; *People* v. *Baker*, 3 N. Y. Supp. 536; *Milwaukee Industrial School* v. *Milwaukee County*, 40 Wis. 328.

COLLINS, J. This is a *habeas corpus* proceeding, brought before us on appeal by respondent from a judgment entered in District

Court awarding the custody of the child in question to the relator, its father. From the return made to the writ of *habeas corpus,* and from the record of the proceedings had in the court below, it appears that in the year 1892 the child had been received into the state public school at Owatonna in accordance with the provisions of Laws 1885, ch. 146, as amended by Laws 1889, ch. 167, and had then been transferred to respondent's family, as authorized by section 13 of said chapter 146. It is disclosed that the steps which led to the placing of the child in the public school were initiated by the filing with the Probate Judge of Lyon county of an application or petition signed by two of the commissioners of said county, in which they stated that "Jessie Rea, a female child between two and fourteen years of age, a resident of said county, is, in their opinion, a child belonging to one of the classes enumerated by the statutes of the state of Minnesota as admissible to the state public school, and is sound in body and in mind, and is entitled to admission into said state public school; and we do request an examination of said child by said court as to such alleged condition, and, should said child be found by said court to belong to one of the classes enumerated by the statutes as admissible to said state public school, that an order be made declaring said child to be in said alleged condition, and that she be sent to and admitted into the state public school, according to law." Attached to this was the written consent of the mother of the child that the application or petition be granted. We have quoted this document in full, that it might be readily seen how defective it was in the essential things required to be stated under the provisions of Laws 1889, ch. 167, § 11. Evidently the statute contemplates that the commissioners shall state that the child named by them is dependent upon the public for support, or that it is in a state of habitual vagrancy or mendicity, or that it is ill treated, and in peril of life, health, or morality, by continued cruel personal injury, or by the habitual intemperance or grave misconduct of the parents or of the guardians. The application or petition in question is otherwise open to criticism, but we do not hesitate to say that when such a document contains nothing more specific in reference to the situation or condition of the child named than did the one at bar it is inadequate, and insufficient upon which to act. The Probate Court cannot thus acquire juris-

diction to proceed against the child or its natural or legal guardians. The defect is not mere irregularity or informality, but is wholly jurisdictional.

It is argued that, as the child was received by the school officials, and detained by the respondent by virtue of the final judgment of a competent tribunal having jurisdiction of the subject-matter, the writ of *habeas corpus* is not available, because of the provisions of 1878 G. S. ch. 80, § 22. Statutes similar to our own, relating to what may be inquired into under this writ, have often been construed by the courts. The broad current of numerous decisions will go to show that the jurisdiction of the tribunal whose judgment is involved over the person detained and the subject-matter may be inquired into at all times, on *habeas corpus*, though mere informality, error, and irregularity cannot be. To bar the applicant from a discharge from arrest by virtue of a judgment or decree or execution thereon, the court in which the judgment or decree was given must have had jurisdiction to render such judgment. It matters not what the general powers and jurisdiction of a court may be. If it act without authority in the particular case, its judgments and orders are mere nullities; not voidable, but simply void, protecting no one acting under them, and constituting no hindrance to the prosecution of any right. *State* v. *West*, 42 Minn. 147, (43 N. W. Rep. 845;) *Elliott* v. *Peirsol*, 1 Pet. 328; *People* v. *Liscomb*, 60 N. Y. 559. But the writ of *habeas corpus* cannot have the force and operation of a writ of error or *certiorari* or appeal, nor is it designed as a substitute for either. It does not, like them, deal with errors or irregularities which render a proceeding voidable only, but with those radical defects which render it absolutely void. A distinction between a proceeding or judgment which is void and one that is voidable only, for error, is recognized in the cases, and must be observed. See *State* v. *Sheriff of Hennepin Co.*, 24 Minn. 87; *In re Williams*, 39 Minn. 172, (39 N. W. Rep. 65.). Nothing more need be said in order to sustain the judgment appealed from, which is affirmed.

VANDERBURGH, J., took no part herein.

(Opinion published 55 N. W. Rep. 880.)