STATE ex rel. FRED I. MADIGAN v. JOHN WAGENER.

December 16, 1898.

Nos. 11,251—(105).

**National Guard neither "Troops" nor "Standing Army" under the Constitutions.**

The national guard or active militia of the state, organized under the Military Code (Laws 1897, c. 118), the members of which, when not engaged, at stated periods, in drilling and training for military duty, are employed in their usual civil vocations, subject to call for military service when public exigencies require, are neither "troops," within the meaning of article 1, § 10, of the federal constitution, nor a "standing army," within the meaning of section 14 of the bill of rights of the state constitution.

**Same—Military Code—Trial by Court-Martial in Time of Peace not Unconstitutional.**

The rules and regulations of the Military Code are merely disciplinary in their nature, designed to secure higher efficiency in the military service, and a violation of them does not constitute a "criminal offense," within the meaning of section 7 of the bill of rights. The provisions of the Code authorizing the trial, in times of peace, of members of the national guard by a court-martial, for a violation of these rules and regulations, and their punishment, if found guilty, by a limited fine, or a limited imprisonment in case the fine is not paid, are not unconstitutional.

Habeas corpus. The facts are given in the opinion. From an order of the district court for Ramsey county, Otis, J., denying relator's petition and remanding him to the custody of the sheriff, he appealed. Affirmed.

*William Louis Kelly, Jr.,* for appellant.

A court-martial is a court of special and limited jurisdiction. The facts necessary to show its jurisdiction, and that its sentence is conformable to law, must be stated or appear positively, and not be left to be inferred. Runkle v. U. S., 122 U. S. 543; In re Grimley, 137 U. S. 147. Guaranty in the constitution of trial by jury was intended for a state of war, as well as a state of peace, but cases arising in the land or naval forces, or militia, in time of war or public danger, are excepted from necessity of presentment, indict-

ment or trial by jury. Ex parte Milligan, 4 Wall. 3. The right of trial by jury is preserved to everyone accused of crime, who is not attached to the army or navy, or militia in actual service. Callan v. Wilson, 127 U. S. 540. To serve out the fine and expenses of a court-martial, is imprisonment for debt. See State v. Brannor, 34 La. An. 942; In re Mitchell, 39 Fed. 386; Thompson v. State, 16 Ind. 516; State v. Farley, 8 Blackf. 229; Deimel v. Arnold, 34 U. S. App. 177.

*George C. Lambert*, for respondent.

Everyone connected with the military or naval branches of the public service is amenable to the jurisdiction which congress has created for their government, and, while thus serving, surrenders his right to be tried by the civil courts. Ex parte Milligan, 4 Wall. 2, 123; In re Grimley, 137 U. S. 147; In re Davison, 21 Fed. 618; McCall's Case, Fed. Cas. No. 8,669.

The modern national guard is the state "army," or land or military force, referred to in the bill of rights of every state constitution. See People v. Daniell, 50 N. Y. 274. The state authorities have absolutely no jurisdiction over the army of the United States, and it has been decided by the supreme court of the United States that, on habeas corpus, they could not even rescue a civilian held by the officers of the federal army. Ableman v. Booth, 21 How. 506; Tarble's Case, 13 Wall. 397. It is true that a civil offense, committed by a soldier and cognizable by the civil courts, may also be prejudicial to military discipline, and as such be punishable by court-martial, but there is no clash of jurisdiction occasioned thereby, and conviction or acquittal in one court is no bar to a trial in the other. U. S. v. Maney, 61 Fed. 140.

Courts-martial are ancient institutions antedating the constitution, and their existence is impliedly recognized in our own constitution and in that of most states: People v. Daniell, supra; Nixon v. Reeves, 65 Minn. 159; 1 Winthrop, Mil. Law, 48; 15 Am. & Eng. Enc. (1st Ed.) 455. They are executive agencies and belong to the executive, and therefore are not affected by the third article of the constitution of the United States or by the sixth article of the constitution of Minnesota. Dynes v. Hoover, 20 How. 65, 79; Trask

v. Payne, 43 Barb. 569; 6 Op. Attys. Gen. 425; Ex parte Mason, 105 U. S. 696; People v. Daniell, supra; Runkle v. U. S., 19 Ct. Cl. 396. Their judgments, when approved by competent authority, are conclusive and cannot be reviewed by any civil court. Dynes v. Hoover, supra; Ex parte Reed, 100 U. S. 13; Moore v. Houston, 3 S. & R. (Pa.) 167; Ex parte Bright, 1 Utah, 145; State v. Stevens, 2 McCord (S. C.) 32; Warden v. Bailey, 4 Taunt. 67, 76; In re Bogart, 2 Sawy. 396; People v. Van Allen, 55 N. Y. 31, 36; Ex parte Vallandigham, 1 Wall. 243; In re McVey, 23 Fed. 878; Wales v. Whitney, 114 U. S. 564; Washburn v. Phillips, 2 Metc. (Mass.) 296; Ex parte Mason, supra; Keyes v. U. S., 109 U. S. 336; In re Esmond, 5 Mackey (D. C.) 64; Johnson v. Sayre, 158 U. S. 109.

But their jurisdiction is special, and limited to particular offenders and offenses, and to those only. Mills v. Martin, 19 Johns. 7; Brooks v. Adams, 11 Pick. 441; In re Wright, 34 How. Pr. 207; Ex parte Milligan, 4 Wall. 2, 123; Brooks v. Daniels, 22 Pick. 498; Runkle v. U. S., supra; Wise v. Withers, 3 Cranch, 330; Ex parte Watkins, 3 Pet. 193; State v. Rogers, 37 Mo. 367; Ex parte Henderson, Fed. Cas. No. 6,349. Civil courts may ascertain whether they have jurisdiction of the offenders and of the offense. Johnson v. Sayre, supra; 15 Am. & Eng. Enc. (1st Ed.) 457; In re Grimley, supra; Dynes v. Hoover, supra.

The constitutional guaranty of trial by jury preserves that common-law right, in substance, as it existed at the time of the adoption of the constitution, and does not extend to that class of cases in which it was not allowed at common law. 6 Am. & Eng. Enc. (2d Ed.) 974, note 6; 978, notes 1 and 3; Proffat, Jur. § 84; 1 Dillon, Mun. Corp. (3d Ed.) § 428 (358); People v. Daniell, supra; Byers v. Com., 42 Pa. St. 89; State v. Danforth, 3 Conn. 112; Waldo v. Spencer, 4 Conn. 71; Goddard v. State, 12 Conn. 448; State v. Oleson, 26 Minn. 507; State v. Lee, 29 Minn. 445; City of Mankato v. Arnold, 36 Minn. 62; State v. West, 42 Minn. 147; State v. Harris, 50 Minn. 128; G. S. 1894, § 6849. On the trial of a soldier it is not necessary to produce the enlistment paper, or prove the formal enlistment of the soldier. It is sufficient to show that the soldier has received pay or performed service as such. 3 Greenleaf, Ev.

§ 483; Lebanon v. Heath, 47 N. H. 353, 359; O'Brien, Mil. Law, 171; Ex parte Anderson, 16 Iowa, 595; Dig. Op. Judges Advocate Gen. 384.

The constitutional exemption from imprisonment for debt relates to debts or obligations arising ex contractu, and not from claims arising ex delicto. 10 Am. & Eng. Enc. (1st Ed.) 215, notes 3 and 4; State v. Becht, 23 Minn. 1; Ex parte Sweeney, 18 Nev. 74; U. S. v. Conway, 6 Fed. 49. Nor do the costs arising in a criminal proceeding, and imposed upon a defendant found guilty, constitute such a debt. 10 Am. & Eng. Enc. (1st Ed.) 219, and cases cited in note 2. Nor are statutes prescribing the rate at which such imprisonment shall serve to discharge the fine inconsistent with its constitutional prohibition. In re Beall, 26 Oh. St. 195; 17 Am. & Eng. Enc. (1st Ed.) 256, and note 1; 21 Id. 1077, and notes 2, 3, 4, 5 and 8; 7 Id. 992, note. The case of Thompson v. State, 16 Ind. 516, cited by appellant to the contrary of the above, has been overruled in McCool v. State, 23 Ind. 127. See also State v. Peterson, 38 Minn. 143; State v. Olson, 38 Minn. 150; State v. Sannerud, 38 Minn. 229.

MITCHELL, J.

The relator, alleged to be an enlisted private in the active militia or national guard of the state of Minnesota, was, pursuant to the provisions of the "Military Code" (Laws 1897, c. 118), arraigned before the regimental court-martial, upon the charges of "absence without leave from regular company drill," in violation of section 27, and "wilful disobedience of orders," in violation of section 26, of the Code. His trial resulted in his being found guilty of the charges, and sentenced to pay a fine of $10 and costs of prosecution, taxed by the court-martial at $25, and, in default of payment thereof, to be imprisoned in the jail of Ramsey county for 12 days. This sentence was duly approved by the convening authority, and notice thereof served on the relator. He having failed to pay the fine and costs within five days, a warrant of committal was duly issued, under section 59 of the Code, and delivered to the respondent, sheriff of Ramsey county, who thereunder took the relator into custody, and imprisoned him in the county jail.

Upon the petition of the relator, a writ of habeas corpus was issued out of the district court, directed to the sheriff, who, in obedience to the writ, produced the relator in court, and returned that he held him by virtue of the warrant of commitment issued by the regimental court-martial. At the time of the allowance of the writ of habeas corpus, and in aid thereof, a writ of certiorari was issued to the proper officer of the court-martial, who, in obedience to the writ, produced a full record of the proceedings had and taken therein, upon which the warrant of commitment was issued. The district court denied the relator's petition for his discharge, and remanded him to the custody of the sheriff, to serve out the sentence imposed upon him by the court-martial; and from this order the relator appealed.

It is, of course, elementary that the only questions which can be reviewed on the writ of habeas corpus are whether the court-martial had jurisdiction of the relator, and whether the sentence was one which the court, under the law, could pronounce. Dynes v. Hoover, 20 How. 65.

1. It is undisputed that the proceedings of the court-martial were in all respects in accordance with the provisions of the "Military Code"; but the points raised by the relator are (1) that it does not appear from the record that he was a duly-enlisted member of the national guard of the state of Minnesota, so as to render him subject to the jurisdiction of a court-martial; and (2) that the provisions of the Military Code are in violation of sections 2, 4, 6, 7, 8, 12 and 14 of the bill of rights of the constitution of the state, and of section 10 of article 1 of the federal constitution.

All we deem necessary to say upon the first point is that, in our opinion, the evidence was plenary that the relator was a duly-enlisted member of the state national guard.

2. Under our Military Code, the active militia or national guard is organized and enrolled for discipline, and not for military service, except in times of insurrection, invasion and riot. The men comprising it come from the body of the militia of the state, and, when not engaged at stated periods in drilling or training for military duty, they return to their usual vocations, subject to call when public exigencies require it, but may not be kept in service, like stand-

ing armies, in times of peace. While enrolled as soldiers of the state for the purposes aforesaid, they are neither "troops," within the meaning of section 10 of article 1 of the federal constitution, nor a "standing army," within the meaning of section 14 of the bill of rights in the state constitution. Dunne v. People, 94 Ill. 120.

But the main reliance of relator's counsel is upon sections 4 and 7 of the bill of rights, the first of which provides that

"The right of trial by jury shall remain inviolate," and the second, that "no person shall be held to answer for a criminal offense unless on the presentment or indictment of a grand jury, except in cases of impeachment, or in cases cognizable by justices of the peace, or arising in the army or navy, or in the militia when in actul service in time of war or public danger."

The contention is that a trial by a court-martial in time of peace, resulting in fine or imprisonment, as authorized by the Military Code, is an invasion of the constitutional rights of the citizen, and especially that it deprives him of the right of trial by jury, contrary to the provisions of section 4, and requires him to answer to a criminal offense in a manner which is in contravention of section 7 of the bill of rights. All that is necessary to be said as to the right of trial by jury is that the constitution simply preserves it in cases where it existed previous to its adoption. Courts-martial existed long before the adoption of the constitution, and their existence is impliedly recognized in our own and the constitution of most of the states. Nixon v. Reeves, 65 Minn. 159, 67 N. W. 989. They are an executive agency, and belong to the executive, and not the judicial, branch of the government. Winthrop, Mil. Law, 52, 53. The course of their proceedings has always been without a jury, save so far as the members of the court perform the functions of both court and jury. Hence it is no objection that, under the Military Code, such courts have no jury, and do not conform their proceedings to those in the ordinary courts of justice. But so far, however, as the constitution imposes any limitations upon the powers of courts-martial, they must be strictly observed; and, as suggested by the learned trial judge, section 7 of the bill of rights may contain some such limitations, but we are satisfied that it contains none which at all affect this case. This section should be read and construed

in connection with article 12 of the constitution, which provides that "it shall be the duty of the legislature to pass such laws for the organization, discipline and service of the militia of the state as may be deemed necessary."

In our opinion, the fundamental error in the argument of counsel for relator is in assuming that the charges upon which his client is held are criminal offenses, within the meaning of section 7. They are not offenses under any general law of the state, or any municipal ordinance applicable to the public generally, and hence not criminal offenses, even as defined in State v. West, 42 Minn. 147, 43 N. W. 845. The acts of omission with which the relator was charged were merely violations of military discipline, under the provisions of the Military Code. The rules and regulations of that code do not affect the public generally, but are confined in their application to the national guard or active militia, and are merely designed to secure a higher efficiency in the military service; in other words, they are purely disciplinary in their nature, and have exclusive regard to the special character and relation of the accused, as a member of the active militia of the state. Laws providing for the discipline as well as the organization of the militia of the state are constitutional requirements; and section 7 of the bill of rights is not to be so lightly construed, as to impair, if not annul, these mandatory provisions.

Training and drill are essential to the efficiency of the militia for military service in case their services should ever be required; and if, as counsel claims, all the executive branch of the government can do to enforce discipline is to discharge dishonorably those who violate military rules and regulations, then all a member of the active militia has to do to relieve himself from his contract of enlistment is to violate it. As is well said by the trial judge:

"Deprive the executive branch of the government of the power to enforce proper military regulations by fine and imprisonment, and that, too, by its own courts-martial, which from time immemorial have exercised this right, and we at once paralyze all efforts to secure proper discipline in the military service, and have little left but a voluntary organization, without cohesive force."

We think that the constitution of every state in the Union has

always contained provisions the same or similar to those contained in our bill of rights. In many, if not most, of the states, they have enacted military codes providing for the enforcement of discipline in their organized or active militia by fine and imprisonment, imposed by courts-martial, even in times of peace. The only exception we have in mind is the state of Missouri, where the power of courts-martial in times of peace is expressly limited to discharging the accused from service. The proceedings of these courts have been frequently assailed, on various grounds, in the civil courts; but, so far as we are advised, in but one other case (People v. Daniell, 50 N. Y. 274) did it ever occur to any one to question the constitutionality of a statute authorizing courts-martial, as a disciplinary measure, to impose fines and imprisonment for violation of military rules and regulations; and, in the case referred to, the point raised was very emphatically overruled.

It is unnecessary at this time to consider what are the limitations upon the nature and extent of the penalty which such courts can impose, but it is very clear that in this case the court did not exceed them.

Judgment affirmed.